The first case today is number 23-1685, United States v. Dominic Bailey. At this time, would counsel for the appellant please introduce himself on the record to begin? Good morning. May it please the court, David Nathanson for Dominic Bailey. So I intend to argue only issues 1 and maybe 2 if there's time for number 2 today, which is the validity of the plea and the sentencing errors. As to issue number 3, which is the Second Amendment issue, this panel is bound by Langston. Maybe the issue eventually is decided on Bonk, but this panel is bound, so I don't intend to spend any time on that today. So it was error to accept this plea. It was not knowing and voluntary. The standard here, we agree, is plain error. A plea is a solemn occasion involving the loss of constitutional rights and years of  Just muddling through in the face of warning signs and confusion isn't good enough. Here there are significant intertwined issues of mental health, of failure to admit the elements and resulting confusion. Mr. Bailey has a long and documented history of mental health issues involving traumatic brain injury, bipolar disorder, substance use disorder, since at least 1992. And this was no secret to the trial judge. Mr. Bailey volunteered it right away. I'll be making some references to my addendum, addendum pages 2 through 4. He volunteered it right at the beginning of the plea. And so when the judge followed up, as one might expect, and asked if his disability interfered with his ability to understand, he said he would need some things explained to him, but otherwise he was OK. But when you inquire of someone with known issues like that, their own perception of how they're doing isn't enough to dispose with further more detailed inquiry. It's just not reliable. The Seventh Circuit has said this in the Anderson case cited in my brief. And that's certainly true with bipolar, which is a disease where people feel OK, sometimes great, when in fact they are not. You need to probe more carefully. A simple, as a limiting factor though, of course, a simple mental health diagnosis on its own may not be enough to require further inquiry. Here, what we're talking about is when there are, in Justice Sellea's words from the Caramadre case, other identifiable red flags, the duty to inquire is stronger. And here there were, I would say, five other identifiable red flags. And so the duty was triggered by the evidence of traumatic brain injury, bipolar disorder, anxiety issues, substance use disorder. Indeed, he was arrested in a guns for meth deal and he was released pre-trial to a treatment facility. And then we have the issue of the confusing theory of guilt and the defendant not being willing to admit some of the facts. Doesn't that cut in a different direction? It shows he's actually paying attention and able to distinguish things that he would admit as opposed to what he would not admit. I'm not sure that it does, Your Honor. And the reason I say that is because he's unwilling to admit. They go to a breakout room and then he comes back and admits. But what he's not admitting, at least in my experience, is somewhat common in this kind of case, which is a lack of ownership, which you can say sort of mitigates. And I've seen this in felon in possession cases where someone says, well, I didn't own the guns. And then the explanation is, but that's not his possession. So it seems to me what happened there is a pretty usual kind of thing in a felon in possession and does show he's paying attention, putting forward what he thinks is a mitigator that isn't. And then he goes and talks to his lawyer and his lawyer says, that's not the mitigator. That seems to be sort of the normal thing a person paying attention might do in this situation. So that happens in normal cases. But within the context of this case, I think it's more serious. And the reason that I say that is, first of all, it's unclear exactly what Mr. Bailey, what theory of guilt Mr. Bailey was pleading guilty to. Is it direct possession, constructive possession, or aiding and abetting? And as to aiding or abetting, the commonwealth's, pardon me, state practitioner, the government's proffer as to the facts omitted the fact that Lysedra. So let me ask you this. On plain error, there's a whole series of communications in the PSR that exists between the undercover and the defendant that show some level of sophistication, I think, about many of these matters. So on plain error, as we figure, as we think about that, what is the impact of those in our thinking on this standard of review? As we, you know, what did he understand? Well, we can see from those texts, he has a pretty good understanding of the law of mental competency of all these things. I understand that. I would say two things. One, obviously, the PSR wasn't before the trial judge, the plea judge, and he's the making the assessment of whether or not Mr. Bailey was competent to plead at the time, whether this was a valid plea at the time. And that mental health, particularly bipolar disorder, but also some of his other issues, are not static things. They fluctuate. And so his status and his ability to understand legal concepts and his grip on reality, those are all things that fluctuate and may have been different at the time that he is, you know, reportedly speaking to the undercover informant or the undercover officer. But counsel, doesn't that undermine your case? The phrase you just used was that it may have been different at the time. But on plain error review, I don't think may have been different gets you there. Well, I would say this, you know, there's one part of the transcript that gives me pause, Justice Salia, and it's this. First of all, it's not justice. We're all judges. Yes. Yes. I apologize. So there's one part of the transcript that gives me pause specifically on that point where the plea judge is asking Mr. Bailey about, you know, what medications he takes. And he can't recount them all. I have a whole list. But he says specifically, I take lithium for bipolar disorder, and he says I take it as needed. And that's not how you take lithium. It's supposed to be an everyday thing. And so, again, this is my concern, particularly with bipolar, is that people feel good, they decompensate. And if he's saying at that time, I'm taking it as needed, it really gives me concern that there really was a problem at the time of the plea. There are other issues at the time of the plea that I wanted to point out, which is that unlike other cases, counsel didn't weigh in to support the defendant's ability to plead. Unlike other cases, the judge made no explicit findings about Mr. Bailey's ability to plead. The plea was, have we lost Justice Judge Salia? We have not. Okay. But what do we consider the actual wider context here? This isn't a situation where someone shows up out of the blue, asks if they plead, and they plead. Rather, there's a long period of time where someone has counsel, where there are negotiations, where a plea agreement is entered into, where counsel explains the plea agreement to the person, where they consent to it, they agree to it, and then there's then the hearing itself. So when you talk about the person fluctuating at different times, it's not clear how that helps you here. Given the many times during which the agreement was manifest. Well, I take your point. I mean, obviously the sentence wasn't agreed. He pled. But I guess what I was trying to point out is on the day of the hearing, there were significant factors that were affecting the knowing and voluntariness. What I wanted to point out was, for example, the judge found that the proceeding was distracting. And then it was on Zoom, which makes it difficult for the judge to assess. Remind me, how much time passed between the acceptance of the plea and his attempt to withdraw the plea? He never attempted to withdraw the plea. We're raising this on direct appeal, so it's a plain error issue. So we not only have plain error, but we also have the problem, which we're attentive to, of someone pleading, taking a look at the sentence, then seeing the sentence they get, and then deciding now I'm going to challenge it. Yes, that's clearly what's before the court, and I would suggest that a remand is appropriate. I just wanted to hit one last point, which is very factually specific, which is right when the government is starting to allege constructive possession, that's when the distraction happens with Mr. Bailey's dog on Zoom. But there's a whole conversation with the lawyer, and the lawyer presumably comes back. The lawyer has consulted with him, and there's no suggestion from the lawyer that anything is troublesome. In fact, there is a point when the court says, is there any reason I shouldn't take this plea? And the lawyer says, no. Now, I don't think it's specifically focused around mental health issues, but the lawyer is engaging with him and not suggesting there's any problem. Can that be part of the thinking in this case? Well, what Your Honor said is true, but this court has said in a number of cases that the court should inquire, to assure itself, should inquire of counsel whether or not they had any concerns about the defendant's ability to plead. I will say, out of the fourth primary plaintiff's error, when it comes to judicial integrity, judicial proceedings, and you have a defendant who makes statements that, I understand that in state court it's not good, it's better to plead incompetent, but in federal court it's not. That's somewhat troubling, don't you think, as far as relief under this kind of extraordinary standard of review? So, I think my best response to that is, that indicates a sophisticated understanding at the time that he made that statement, but it does not indicate his state of mind at the time that he pled. Are there no further questions? Thank you. Thank you, counsel. At this time, counsel for the United States, please introduce himself on the record to begin. Good morning. Donald Lockhart for the government, and may it please the court. So, this is a defendant who pled guilty to this precise same offense twice before. Felon in possession of a firearm. So, he certainly knows what the offense involves, what the elements are. He's pled guilty to it twice. Second point. Although, did he pled guilty to it before the law change in this area? I mean, there's a major change in the law that has some impact on the argument about being the aider and abetter. Sure, but there are a couple points in response to that. Number one, there's no question he knew that he had been sentenced to prison terms of a year or more, because there were a bunch of them, and two federal ones that were 37 and 41 months. So, there's no rehafe issue in this case, nor would there have been. Well, he says there's one as to the co-defendant. If it is an aiding and abetting theory, which I'm not sure it is, how does he know that she'd been in jail for a year? Right, so it's clearly not an aiding and abetting theory. The overwhelming nature of the facts that we recited at the Rule 11 hearing were oriented toward Mr. Bailey as a principal. He, as he ultimately admitted, was the source of these guns, even though not the owner of them. He admits further that he negotiated the guns for methamphetamine deal. He admits furthermore that he delivered the guns, or helped deliver them, down from Vermont to Boston. So, he's clearly entrenched as a principal here. Isn't there an inconsistency in all three of those facts? You rely on what he admitted, but whether he's admitting stuff knowing and confidently is the precise issue that we're looking at. Well, and so let me just address the point of his competency to plead. As I began to say, the stark fact is that this is somebody who's pled guilty to the exact same offense twice before. Second, as has been pointed out, if you look at the PSR, the sealed sentencing appendix, you see him talking to the undercover agent about two things. Number one, it's easy to feign incompetence in the state system, but you can't get away with it in the federal system. Number two, in the federal system, they have this concept called constructive possession, which makes it very difficult to beat one of these gun charges. So, this is a very savvy, sophisticated defendant, who also, at the plea, begins to try to mitigate his guilt, try to downplay his guilt, and then the judge stops the proceedings and the defendant finally comes back on the record after talking with his attorney and says, essentially, yeah, you're right. Although I wasn't the owner of the guns, I was nonetheless the source of them. I also took these guns down from Vermont or helped take them down from Vermont to Boston, and I negotiated the whole deal. So, there's nothing in the exchanges between the judge and this defendant which should give anyone any pause about his ability to enter a knowing and voluntary plea. It's all a very lucid, intelligent exchange. The defendant asks appropriate questions, including questions about whether the guns can be forfeited. He's alert. He says he's alert. He says his medications aren't affecting his ability to plead. And notice, just on that point, that the judge presses him twice very forcefully on the issue of his medications. And in each case, he says he is totally clear and able to plead guilty. So, this all goes to, I think, the third prong of plain error, that there's nothing here that we should be concerned about as it goes to the core issues. Do you think that the plea colloquy was sufficient? Yes, it was, because the judge elicited from the defendant several of the medications he was on. He described some of their purposes, bipolar and blood pressure medications. Do you think a judge should, when someone says, well, I'm on a bunch of drugs, including lithium, I don't remember the other ones, do you think a judge should ascertain what those other drugs actually are? Perhaps in an ideal world, but what I would say is this. There's a suggestion that the defendant was actually confused about the medications that he was prescribed. And that's not the case at all. If you look carefully at the exchange between the judge and the defendant on this point, what you see is that the defendant ticks off two or three of the medications. He says he knows the rest. He has a list of the rest, but he finds them hard to pronounce. Now, if you look at page or paragraph 156 of the pre-sentence report, which sets forth all of his medications, you see why he or anyone would have a problem pronouncing them. They're largely unpronounceable medications. Some of them multi-syllables. I wouldn't even attempt to do it in open court. So he's expressing unease about his ability to pronounce these things. He's not telling the court that he doesn't know what they are. So that's an important distinction. But to your point, yes, in an ideal world, judges would do what Judge Torres did in the District of Rhode Island and have a typewritten list of the medications and have a doctor's note appended to it as an exhibit to the plea hearing saying that none of these things should affect the defendant's ability to plead. If I were a district court judge, would I do that? Sure. Is it a better practice to do something along those lines? Maybe. But on plain error review, it is certainly not plain or obvious that the colloquy that occurred here with respect to the medications was deficient. Again, the judge covered at least some of the medications and had a very forceful exchange with the defendant on this point, as part of which he said, remember, this is a very serious felony. It's a serious decision that you're making. Are you clear, notwithstanding these medications? Each time, the defendant said, yes, unequivocally, no qualifications. And we think that the Maya Encarnacion case and other decisions of this court have said that there is no settled rule that a judge has to ascertain the specific medications and dosages, that the question at base is whether the defendant has the ability to enter a knowing and voluntary plea, and that can be determined from the defendant's quote, unquote, performance at the plea hearing. And the defendant's performance in this proceeding was, we would say, stellar by any metric. Do we consider in assessing the obviousness of the claimed error, do we consider at all the strength of the government's case against him in that, if it was a weak case, that might cause one to wonder why he's pleading and have a little more degree of scrutiny over competence? Yes. As we say in the brief, the Supreme Court itself has said that in plain error review of unpreserved plea challenges, just like this one, one of the important factors is the strength of the government's case for precisely the reason you're suggesting in here. If it was an airtight case, the defendant was arrested back in 2019 and had several years to contemplate his decision to plead guilty before finally pleading guilty in 2021. He knew the strength of our evidence, and that certainly bears on the plain error inquiry. But I want to make a point about a reply brief suggestion that my brother hasn't mentioned at oral argument, but could potentially mislead the Court. There's a suggestion in the reply brief that the defendant was actually possibly taking controlled substances in the lead-up to the guilty plea, not the prescribed medications issue. But actually, my brother seems to contend that the record supports the notion that he was maybe taking controlled substances, including possibly meth, up to the plea period. But if you look at the sealed sentencing transcript that apparently was sent up to this Court that was not reflected on the district court docket sheet, the public docket sheet, you look at page three of that, there are three sentences which rebut that notion. Quote, for nearly two and a half years, this is Bailey's trial defense attorney, for nearly two and a half years Bailey has been entirely abstinent from unprescribed drugs. He has remained engaged in psychiatric and psychological treatment and is compliant with his medications. During his 18 months on pretrial release, he never failed a single drug test. So to the extent there is a prong-free issue about whether a remand on the issue of controlled substances would reveal that Mr. Bailey was somehow taking controlled substances in the lead up to his plea, that concession by the defense I think tamps down any such notion. Mr. Lockhart, I have one sentencing question. So one issue is the arrests that were mentioned. So Judge Gorton is describing the basis for the upward variance, which is the record. He not only discusses the convictions, but he mentions the arrests as he's been convicted or arrested once a year for the past X number of years. You seem to say he shouldn't have mentioned the arrests. What should we do with that? Right. So as we say in the brief, there's a fairly recent decision of this court which establishes, and we cite it, the defense cites it, saying that mere reliance on arrest records is plain or obvious error for these purposes. And we concede that point. Our point is a prong-free point, which is that the overwhelming focus of the judge's upward departure ruling was on other factors, including most prominently the fact that he had one unscored federal 922G conviction for a serious federal offense involving 25 to 49 stolen firearms, providing guns to gangs in Connecticut. And then he had 30, over 30, unscored state convictions, many of which look serious, not to mention, the judge said, that there is evidence that he committed new crimes while on pretrial release in this very case. So the judge is mainly focusing on those factors. He does mention the arrests, but there is no reasonable probability that if you were to remand the case to this judge that he would delete this upward departure and say, well, I shouldn't have considered the arrest. I take it back. I'll reverse this upward departure ruling. How do you distinguish our opinion in Marrero-Perez? It seems very close. And we held it was plain error. We're conceding that it's plain error. So it's just a prong-free issue. And that, of course, turns on the unique facts of what happened. And the judge mentioned the prior arrests twice, didn't he, during his explanation? In quick succession. There are two sentences in the upward departure ruling where the judge mentions the prior arrests. So why was he mentioning them twice if he wasn't giving some weight to them? Well, I would agree he was giving, that that indicates that he was giving some weight to them. Our point is that the overwhelming focus of his ruling was on other factors that I've just ticked off. And therefore, the defense can't satisfy its burden under prong three to show a reasonable probability that if the case were remanded, the judge would not impose this upward departure. And that's factually why it's distinguishable from the case that you mentioned, even though on prong two, I would grant that there may not be a distinction. So that's the main, that's our position. It's a prong-free argument, not a prong-two argument. Thank you. Yes. Thank you, Counsel. That concludes argument in this case.